UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE HUANG,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 18-cv-06112-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 19 |

Plaintiff Jennie Huang seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff applied for Title II and Title XVI benefits on February 21, 2014 and January 23, 2014, respectively. (Administrative Record ("AR") 179, 184.) Plaintiff asserted disability beginning August 1, 2011. (AR 177, 185.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 90, 99.) On March 25, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 105.) The ALJ held a hearing on July 17, 2017. (AR 33.)

The ALJ considered a number of medical opinions in rendering a decision. (*See* AR 21.) On January 3, 2014, Dr. Whitney Lynch, Psy.D., conducted a psychological evaluation, in which

she assessed that Plaintiff had "an enduring psychiatric disability which prevents her from being employable." (AR 591.) During the evaluation, Plaintiff reported that she had become increasingly anxious, depressed, and isolative since being diagnosed with Hodgkin's Lymphoma in 2010. (AR 592.) She stated that as a result of her anxiety, she rarely left the home. Her parents would "force" her to get out of the house, and she spent up to two to three weeks at home without leaving. When she accompanied her parents on errands, she experienced panic attacks and worry, and also worried that her stress would increase the chances of her cancer returning. (AR 592.) Plaintiff further reported irritability and difficulty sleeping, getting only four to five hours a day. (AR 592-93.) Plaintiff also stated she had low energy, preventing her from standing for more than thirty minutes. (AR 592.) Plaintiff endorsed passive thoughts of suicidal ideation. Plaintiff also stated she was having memory problems. (AR 592.)

With respect to activities of daily living, Plaintiff stated that she lived with her parents. (AR 593.) Her appetite was low, and she did not cook because it was difficult to follow recipes. She stated that she often forgot what she was doing, avoided taking public transportation, and would go to the grocery store with her parents about once a month. (AR 593.) Plaintiff reported that she typically spent her day lying in bed staring at the ceiling, browsing websites on the computer, talking to her mom, walking around the house, and "trying" to watch television, although she found it difficult to follow the plot. (AR 593.) Plaintiff stated she did not see any of her friends, and that she had a boyfriend of five years who she met on the internet and saw once a year, and talked to on the phone about four to five times a week. (AR 593.)

As to her history, Plaintiff reported that she was hit by a car in 2007, which caused her to lose consciousness and be taken to the hospital for a broken clavicle. (AR 594.) After the accident, her school performance significantly declined, as she started receiving poor grades when she had previously received As and Bs. (AR 594.)

Dr. Lynch observed that Plaintiff presented as appropriately groomed, but that her movements and performance on neurological testing were noticeably slow. (AR 594.) Her mood was dysphoric and her affect blunted. Her attention was distractible and questions had to be repeated. Plaintiff's memory was impaired, and she was preoccupied about her cancer returning

and suicidal ideation. Her thought process was logical and linear, and her judgment was fair, but her insight was limited. (AR 594.) Dr. Lynch found no overt malingering. (AR 594.)

Based on Plaintiff's performance, Dr. Lynch measured Plaintiff's reading abilities at the 8th grade level, her processing speed in the <1st percentile, her verbal memory as poor, and her attention and learning as poor. (AR 595.) Plaintiff's non-verbal learning and memory were better than her verbal performance, and within the average range. Plaintiff's speed on psychological testing was significantly impaired. Dr. Lynch opined that Plaintiff's psychiatric symptoms, her prior head injury, and chemotherapy negatively impacted her speed, attention, learning, and memory. (AR 595.)

Dr. Lynch diagnosed Plaintiff as having panic disorder with agoraphobia, and major depressive disorder. (AR 596.) Dr. Lynch found that Plaintiff's processing speed was severely impaired and her verbal learning and memory impaired, affecting her ability to communicate with others and perform activities of daily living. Such symptoms met the criteria for Cognitive Disorder Not Otherwise Specified. (AR 596.) Dr. Lynch opined that Plaintiff's severe anxiety and agoraphobia would prevent her from engaging in daily activities such as riding public transportation, shopping, and engaging in leisure activities. Plaintiff would have difficulty in work-related situations on a consistent basis, and would have difficulty sustaining energy and attention throughout a work day. (AR 596.) Plaintiff would also have difficulty keeping up with work demands, learning new tasks, and implementing new tasks. (AR 597.)

On June 3, 2014, Plaintiff had a consultative examination with Dr. Ute Kollath, Ph.D. (AR 616.) Dr. Kollath observed that Plaintiff stated she had limited English skills, but was able to follow interactions in English well. (AR 616.) Plaintiff presented as withdrawn and evasive, making poor eye contact. Her facial expressions and gross motor functions were normal, and she interacted appropriately with the examiner and office staff. (AR 616.)

Dr. Kollath found that Plaintiff was a poor historian and provided limited information. (AR 616.) Plaintiff stated she was diagnosed with cancer but did not indicate what kind of cancer. Plaintiff stated she was generally fatigued and afraid any work stress would trigger further cancer. She alleged that she could not drive but had a valid driver's license. (AR 616.) Plaintiff reported

3

physical limitations due to medical problems, but was independent for basic activities of daily living and did not need help preparing meals. (AR 617.) Plaintiff chose not to drive. She was able to make change at the store, and typically spent her days on walks or resting at home. (AR 617.)

Based on the examination, Dr. Kollath found Plaintiff's intelligence was fair, her attention was adequate, her concentration was impaired, her fund of knowledge was fair for current events, her memory was adequate, her judgment was fair, her insight was fair, her mood was stable, her thought process was intact and linear, and her thought content was unremarkable. (AR 618.) Plaintiff expressed no suicidal ideation. Dr. Kollath found that Plaintiff's performance on mental status was unreliable and inconclusive, but that she had no difficulty following simple and moderately complex directions. (AR 618.) Dr. Kollath observed that Plaintiff could have symptoms of a cognitive disorder, but that "her variable motivation towards the assessment interfered with a full evaluation." (AR 618.)

Dr. Kollath opined that Plaintiff had an unspecified mental disorder, but that she was generally unimpaired. (AR 618-19.) Dr. Kollath found mild impairments in Plaintiff's ability to withstand the stress of a routine workday and to adapt to changes, hazards, or stressors in a workplace setting. (AR 619.)

On November 13, 2014, Plaintiff was evaluated by Danielle Wu, Psy.D. (AR 666.) Dr. Wu found Plaintiff had a psychiatric disability that prevented her from being employable. (AR 666.) Plaintiff reported symptoms including anxiety, anxiety-related physical symptoms, depressed mood, poor concentration, irritability, sleep disturbance, social isolation, low energy, and trauma-related symptoms. (AR 667.) Plaintiff reported having daily thoughts about her cancer treatment, hypervigilance, sleep disturbances, intense physiological distress in response to traumatic reminders, detachment from others, and persistent and distorted beliefs about herself and the world. (AR 667-68.) Plaintiff stated she could not leave the house without her parents, had a history of panic attacks, and feared her cancer returning. (AR 668.) She denied any current suicide ideation. (AR 668.)

In terms of activities of daily living, Plaintiff reported being completely dependent on her

parents for her activities. (AR 668.) She could shower on her own, but her mom assisted her with putting on clothes, cleaning, laundry, phone calls, and cooking. She could not squat or kneel for extended periods of time, would have to be reminded of appointments, and had low energy. She would not take the bus unless accompanied by her mother, and tried to avoid contact with others while in public. Her primary means of contact was text messaging and social networking sites. (AR 668.)

Dr. Wu found that Plaintiff refused to get psychiatric treatment, which likely suggested impaired judgment and insight. (AR 668.) Dr. Wu also noted Plaintiff's 2007 head injury, in which she lost consciousness and then suffered a significant academic decline. (AR 669.) Dr. Wu observed that Plaintiff was appropriately groomed but that her hair was unkempt and her teeth showed signs of decay. (AR 669.) She was timid and anxious, and lacked confidence in her test responses even when she got the beginning questions correct. (AR 669-70.) Questions had to be repeated due to Plaintiff's problems with concentration and attention. (AR 670.)

As to the test results, Dr. Wu performed brief cognitive and achievement testing due to Plaintiff's poor attention, concentration, and memory difficulty. (AR 670.) She appeared to put forth adequate effort. Her intellectual functioning was in the borderline to low average range, and her memory was severely impaired. (AR 670.) Dr. Wu opined that Plaintiff would have difficulty following through with job tasks, and remembering and carrying out simple instructions. (AR 671.) Plaintiff also had low average attention and concentration. (AR 671.)

Dr. Wu concluded that Plaintiff had multiple psychiatric symptoms that profoundly impaired her ability to function on a daily basis, including significant impairment in daily activities, attention, memory, and social skills. (AR 671.) Dr. Wu found her prognosis poor, especially with her inability to recognize the importance and need for psychiatric treatment. (AR 671.) Dr. Wu opined that Plaintiff's psychiatric symptoms would pose challenges for her ability to work. (AR 672.)

At the hearing, Plaintiff testified that she lived with her parents. (AR 35.) She took the bus to the hearing, and stated that she had never worked. (AR 36.) She reported that she had depression, rarely went out, slept only two to three hours a night, and had hearing problems. (AR

37.) She testified that she went outside on her own, including going to Safeway to buy something to drink. (AR 40.) She would watch television but sometimes did not understand because she could not concentrate. (AR 41.) She kept track of her appointments by writing it in her diary, and her mom would also remind her. (AR 42.) She stated that her mom prepared meals for her, and that she had a driver's license but would not drive alone, although she would drive with other people. (AR 43.)

Following the hearing, the ALJ denied Plaintiff's application on August 8, 2017. (AR 15-25.) A request for review of the ALJ's decision was filed with the Appeals Council on September 1, 2017. (AR 173.) The Appeals Council denied Plaintiff's request for review on August 15, 2018. (AR 1.)

On October 4, 2018, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On February 4, 2019, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 18.) On March 4, 2019, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 19.) On March 18, 2019, Plaintiff filed her reply. (Pl.'s Reply, Dkt. No. 20.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated

according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On August 8, 2017, the ALJ issued an unfavorable decision. (AR 15-25.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 23, 2014, the application date. (AR 17.)

At step two, the ALJ found Plaintiff had the following severe impairments: history of Hodgkin's lymphoma, depression, anxiety, and hearing loss. (AR 17.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 17.)

7

At step four, the ALJ found that Plaintiff had the RFC to perform light work, except that she could stand and walk for four hours, could work in places with less than 80 decibel background noise, and could perform simple, routine work with occasional public contact. (AR 18.) In so finding, the ALJ noted that Plaintiff alleged persistent anxiety and depression, but that her mental status was normal in June and September 2012. (AR 20.) Her mental status was stable in March 2013 and she was smiling in October 2013 and 2014. (AR 20.) In June 2015, she was observed as being cooperative and pleasant. (AR 20.) While her mood was anxious, she had full range of affect, normal and logical thought processes, intact memory, normal attention and concentration, and good judgment. During a physical exam in May 2016, she reported poor memory but was smiling a lot, was very interactive, and had a stable mental status. (AR 20.)

The ALJ summarized Dr. Wu's and Dr. Lynch's opinions, but gave them little weight. (AR 21.) The ALJ explained that the examinations were made for the sole purpose of supporting her social security application, and based on one-time examinations. The ALJ further found that the limitations and findings were inconsistent with other evidence in the record. For example, Dr. Lynch found Plaintiff could not take public transportation, but Plaintiff had taken the bus to the hearing. (AR 21.) Both doctors also relied on inaccurate reporting from Plaintiff. The ALJ pointed to Plaintiff telling Dr. Wu that she had lost consciousness in the 2007 accident, and that her grades had fallen from mostly As and Bs. The medical evidence, however, showed no loss of consciousness, while school records showed no substantial fall in grades as Plaintiff had Cs and Ds from before the accident. (AR 21-22.) The ALJ also found that Dr. Wu's and Dr. Lynch's opinions were inconsistent with Plaintiff's level of daily activity and appeared to rely greatly on her subjective reporting. (AR 22.)

Later in the opinion, the ALJ found that Plaintiff engaged in a breadth of activities, including watching television, using a computer, attending to her personal care, caring for pets, preparing simple meals, dusting, vacuuming, folding laundry, washing dishes, shopping in stores for clothes and makeup and food, paying bills, using public transportation, talking on the phone, and attending family gatherings. (AR 23.) The ALJ also noted inconsistencies, including Dr. Kollath's observation that Plaintiff was an unreliable historian. (AR 23.) For example, Plaintiff

told Dr. Wu she could not dress herself or speak on the phone without assistance from her mother, while telling Dr. Kollath she did not need help preparing meals, could make change at the store, and spent part of her day taking walks. (AR 23.) The ALJ also noted some inconsistency in Plaintiff's ability to speak English, as she asserted the need for an interpreter but could follow interactions in English, told one provider she was more proficient in English than in Cantonese, interpreted from English to Cantonese for her mother, completed two detailed function reports in English, and had a medical provider speak to her in English. (AR 23.)

At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 24.) Therefore, Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision solely on the ALJ's rejection of Dr. Wu's and Dr. Lynch's opinions. (Pl.'s Mot. at 7.) In her motion, Plaintiff argues that the ALJ should have given the opinions more weight per the factors listed in 20 C.F.R. § 416.927(c), which considers the examining relationship, supportability, consistency, specialization, and other factors. (*Id.* at 10-11.) Specifically, Plaintiff contends Dr. Wu and Dr. Lynch had examined Plaintiff, supported their opinions with evidence and explanations, reviewed prior medical records, were specialized as psychologists, and understood the Social Security disability program. (*Id.* at 11-14.) She argues the ALJ erred by instead focusing on reasons to reject the opinions, rather than providing more analysis as to these specific factors. (*Id.* at 14.)

The Court disagrees. The ALJ acknowledged that both Dr. Wu and Dr. Lynch had examined Plaintiff and were psychologists, but found that their examinations were one-time exams made for the purpose of obtaining social security benefits. Further, the ALJ found that their opinions were not supported or consistent with the record. Specifically, the ALJ cited to contradictory evidence showing that Plaintiff's mental status was normal in June and September 2012, March 2013, and May 2016. (AR 20.) The ALJ pointed to other examinations that showed Plaintiff had normal and logical thought processes, intact memory, normal attention and concentration, and good judgment, directly contradictory to Dr. Wu's and Dr. Lynch's findings. (AR 20, 22.)

9

Notably, the ALJ also provided specific and legitimate reasons for rejecting Dr. Wu's and Dr. Lynch's opinion based on their reliance on Plaintiff's subjective complaints. "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation omitted). The ALJ noted that Dr. Kollath had found Plaintiff was an unreliable historian, and also explained that Plaintiff had inaccurately reported information to Dr. Wu and Dr. Lynch. (AR 21, 22.) For example, Plaintiff had told Dr. Wu and Dr. Lynch that she had lost consciousness during a 2007 accident, and that her grades substantially fell afterwards. (AR 21, 594, 669.) Plaintiff also told Dr. Wu she could not dress herself or even speak on the phone without assistance, but told Dr. Kollath that she was capable of more complex activities such as preparing meals, making change at the store, and taking walks. (AR 23.) She also had stated that she was capable of personal care. (AR 23.) The ALJ also pointed to Plaintiff endorsing a myriad of symptoms when asking a doctor to complete a form to receive cash assistance, when treatment notes from that same month showed she said she was feeling better, with increased energy and appetite. (AR 23.) Thus, the ALJ could find that Plaintiff's complaints should be discounted, and that the opinions reliant on those complaints could be given little weight.

Additionally, the ALJ also found that Dr. Wu's and Dr. Lynch's findings were inconsistent with Plaintiff's level of daily activity. A conflict between a doctor's opinion and a claimant's daily activities "may justify rejecting a . . . provider's opinion." *Ghanim v. Colvin*, 763 F.3d 154, 1162 (9th Cir. 2014). Here, for example, the ALJ noted that Dr. Lynch had opined that Plaintiff could not engage in daily activities such as riding public transportation, but that Plaintiff had taken the bus to the hearing. (AR 21.) Dr. Lynch and Dr. Wu had also found Plaintiff could not perform simple instructions, but the ALJ observed that Plaintiff could perform chores such as preparing simple meals, dusting, vacuuming, folding laundry, washing dishes, attending to her personal care, shopping in stores, and paying bills. (AR 21, 23.) Such activities were inconsistent with the findings that Plaintiff had severe, significantly impairing limitations, and were a specific and legitimate reason for giving little weight to the doctors' opinions. *See Rollins v. Massanari*,

10

261 F.3d 853, 856 (9th Cir. 2001) ("the restrictions appear to be inconsistent with the level of activity that [the plaintiff] engaged in . . . ."; *Lee v. Berryhill*, No. 15-35630, 721 Fed. Appx. 604, 606 (9th Cir. 2017) (finding that the ALJ provided specific and legitimate reasons to reject the examining physician's opinion where the plaintiff's "daily activities [were] inconsistent with [the physician's] conclusion that [the plaintiff] cannot work").

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

Dated: January 24, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge

11